**NOT FOR PUBLICATION** (Doc. No. 50)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ROBERT O'BRIEN, | :<br>:<br>: |
| Plaintiff, | : Civil No. 09-2289 (RBK/KMW)<br>: |
| v. | : **OPINION**<br>: |
| BIOBANC USA, ABC CORPORATIONS 1-5, DEF PARTNERSHIPS 1-5, and GHI LIMITED LIABILITY COMPANIES 1-5, | :<br>:<br>:<br>: |
| Defendants. | :<br>: |

**KUGLER**, United States District Judge:

This matter arises out of a contract dispute over a warrant to purchase common stock. Presently before the Court is the Motion for Default Judgment filed by Plaintiff Robert O' Brien. For the reasons discussed below, the Court will **GRANT** Plaintiff's request for entry of default judgment.

**I.      BACKGROUND**

The relevant facts of this dispute are outlined in the Court's Opinion filed on July 19, 2010. (Doc. No. 47). Therefore, the Court will include only the additional facts relevant to the pending motion.

In the Opinion issued on July 19, 2010, the Court denied Defendant BioBanc USA's ("BioBanc") motion for summary judgment, Plaintiff's cross-motion for summary judgment, and Plaintiff's motion to seal. In that Opinion, the Court expressly rejected Plaintiff's argument that he is entitled to monetary damages because BioBanc conceded liability in a letter dated

1

December 17, 2009.  (Id. at 6).  In particular, the Court noted "[o]utside the letter, Plaintiff has done nothing to demonstrate that he is entitled to a cashless exercise under the 2006 Agreement under basic principles of contract interpretation."  (Id.).

On July 15, 2010, Magistrate Judge Williams issued an order granting Diane Stolbach's motion to withdraw as BioBanc's counsel.  (Doc. No. 46).  Magistrate Judge Williams nevertheless ordered Stolbach to "continue to represent [BioBanc] until August 16, 2010 for the limited purpose of continuing settlement discussions," and instructed [BioBanc] to obtain new counsel "[o]n or before August 16, 2010" or "be subject to default judgment."  (Id.).  BioBanc failed to obtain counsel prior to August 16, 2010.

On July 23, 2009, BioBanc issued a Private Placement Memorandum ("PPM").  (O'Brien Decl. Ex. C, at 27).  The PPM valued the company at $20,000,000.00, and represented that a 1% interest in BioBanc was worth $200,000.00.  (Id.).

On August 17, 2010, the Clerk made an entry of default against BioBanc.  On September 2, 2010, Plaintiff moved for default judgment.  BioBanc did not respond to Plaintiff's motion.

## II. STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs a court's determination concerning entry of default judgment.  Parties requesting default judgment are not entitled to that relief as a matter of right.  Local Union No. 98, Int'l Brotherhood of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903, at *1 (E.D. Pa. Apr. 28, 1999).  Before granting default judgment, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action."  Signs by Tomorrow-USA, Inc. v. G.W. Engel Co., No. 05-4353, 2006 WL 2224416, at *2 (D.N.J. Aug. 1, 2006) (citing DirecTV, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal

Practice and Procedure § 2688 (3d ed. 1998). The court should accept as true all well-pleaded factual allegations in the complaint by virtue of the defendant's default, except for allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Asher, 2006 WL 680533, at *1; 10A Wright, Miller & Kane § 2688. However, the court need not accept a plaintiff's legal conclusions. Cotapaxi Custom Design & Mfg., LLC v. Pacific Design, No. 07-4378, 2010 WL 2330086, at *3 (D.N.J. June 8, 2010) (citing Signs by Tomorrow-USA, Inc., 2006 WL 2224416, at *2).

In addition, the Court must consider the following three factors when exercising its discretion to grant default judgment: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." GP Acoustics, Inc. v. Brandnamez, LLC, No. 10-539, 2010 WL 3271726, at *3 (D.N.J. Aug. 17, 2010) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)). "In weighing these factors, [the] district court[] must remain mindful that, like dismissal with prejudice, default is a sanction of last resort." Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984)).

### III. DISCUSSION

#### A. Jurisdiction

"Before entering a default judgment against a party that has not filed responsive pleadings, 'the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" Bank of Am., N.A. v. Hewitt, No. 07-4536, 2008 WL 4852912, at *2 (D.N.J. Nov. 7, 2008) (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).

In this case, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the case involves citizens of different states and the amount in controversy exceeds $75,000.00.  Plaintiff is a citizen of New Jersey and BioBanc is a California corporation with its principal place of business in Monterey, California.  Therefore, the parties are diverse.

Moreover, the jurisdictional amount is satisfied.  The Amended Complaint alleges that "[a]s a direct and proximate result of [BioBanc's] breach, Plaintiff has suffered damages in an amount in excess of $75,000.00."  (Am. Compl. ¶ 24).  Thus, the amount in controversy requirement is satisfied.

The Court also has personal jurisdiction over BioBanc.  "A district court may exercise personal jurisdiction over a nonresident of the forum to the extent authorized by the forum state's long-arm statute."  Arlandson v. Hartz Mountain Corp., No. 10-1050, 2011 WL 2112494, at *2 (D.N.J. May 26, 2011).  Here, the Court need not determine whether it may exercise jurisdiction over Plaintiff under either New Jersey law or California law, because BioBanc waived the right to object to personal jurisdiction by moving for summary judgment.  See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982) (noting that parties may waive the right to object to personal jurisdiction in a given fora by making an appearance).  Thus, the Court has both subject-matter and personal jurisdiction over the issues and parties in this dispute.

## B. Entry of Default Against a Corporation Without Counsel

A corporation may only appear in court through a licensed attorney.  See Days Inns Worldwide, Inc. v. 5 Star, Inc., No. 09-1009, 2011 WL 1253746, at *3 (D.N.J. Mar. 29, 2011) (citing First Franklin Fin. Corp. v. Rainbow Mortg. Corp., Inc., No. 07-5440, 2010 WL 4923326, at *1 (D.N.J. Nov. 23, 2010) (citing Simbraw, Inc. v. United States, 367 F.2d 373 (3d Cir.

1966)). Generally,

> when the basis for entry of default against a corporation is failure to appear with counsel, the findings underlying the entry of default should be rendered after a fair hearing. Due process demands at least an informal hearing for presentation of evidence and explanations of the defendant, its counsel, and the opposing party. However, in extreme cases, as when a pro se defendant has engaged in willful disobedience to the Federal Rules of Civil Procedure and orders rendered by the court, entry of default judgment will not be set aside.

Newman v. Axiom Worldwide, No. 06-5564, 2010 WL 2265227, at *2 (D.N.J. June 2, 2010) (citing 9A Fletcher Cyc. Corp. § 4700 (internal citations omitted)).

Here, Magistrate Judge Williams appropriately informed BioBanc that it must obtain counsel within thirty days of the July 15, 2010 Order. (Doc. No. 46) ("On or before August 16, 2010, Defendant shall have new counsel or be subject to default judgment."). BioBanc failed to obtain counsel. As a result of BioBanc's failure to obtain counsel, the Clerk appropriately entered default against BioBanc.

Moreover, an informal hearing is unnecessary. After BioBanc's counsel withdrew, BioBanc failed to comply with Magistrate Judge Williams's Order. Approximately ten months have elapsed since Magistrate Judge Williams ordered BioBanc to obtain counsel. During that period, BioBanc has neither obtained counsel nor requested an extension of Magistrate Williams's deadline. Because BioBanc failed to comply with Magistrate Judge Williams's Order, the Court finds that an informal hearing is unnecessary.

### C. Whether Entry of Default Judgment is Appropriate

As previously mentioned, before granting default judgment, "it remains for the court to consider whether the unchallenged facts constitute a legal cause of action." Signs by Tomorrow-USA, Inc., 2006 WL 2224416, at *2. The court should accept as true all well-pleaded factual

5

allegations in the complaint by virtue of the defendant's default, except for allegations relating to amount of damages. Comdyne I, Inc., 908 F.2d at 1149. However, the court need not accept a plaintiff's legal conclusions. Cotapaxi Custom Design & Mfg., LLC, 2010 WL 2330086, at *3.

Plaintiff alleges three causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) promissory estoppel.

### 1. Breach of Contract[1]

Under New Jersey law, a plaintiff must establish the following elements to state a claim for breach of contract: "(1) the existence of a contract between the parties; (2) the plaintiff satisfied the terms of the agreement; (3) the defendant failed to satisfy at least one term of the agreement; and (4) the breach caused the plaintiff to suffer damages."[2] Carter Ledyard & Milburn LLP v. Carrascosa, No. 07-3216, 2010 WL 3703699, at *3 (D.N.J. Sept. 2010). Moreover, it is well-settled that a contract requires offer, acceptance, and consideration. Smith v. SBC Commc'ns Inc., 839 A.2d 850, 861 (N.J. 2004).

Here, Plaintiff alleges that: (1) Thomas O'Brien and BioBanc entered a valid contract, pursuant to which he is a third-party beneficiary; (2) Plaintiff satisfied the terms of the contract by tendering a $10.00 check to BioBanc on February 19, 2009; (3) BioBanc breached the contract by refusing to issue stock or a warrant to Plaintiff, and instead informing Plaintiff that it would sell him 2,000 shares of its common stock at a price of $125.00 per share; and (4) as a result of BioBanc's conduct, Plaintiff suffered damages. Those allegations, if true, state a claim for breach of contract in New Jersey and California.

---

[1] Because the Court has received no briefing on which state's laws should govern this dispute, the Court applies both the laws of California and New Jersey without holding which governs.

[2] The elements of a breach of contract claim are substantially the same in California. See Wall Street Network, Ltd. v. New York Times Co., 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008) ("The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.") (internal citations omitted).

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

In New Jersey, "every contract . . . contains an implied covenant of good faith and fair dealing." Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997). This covenant demands that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." Id. (internal quotations omitted). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000) (citing Sons of Thunder, Inc., 690 A.2d at 589).

An essential element of any claim for breach of the covenant of good faith and fair dealing is proof of "bad motive or intention." Brunswick Hills Racquet Club, Inc. v. Rte 18 Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005). Thus, "[t]he party claiming a breach of the covenant of good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Id. (citing 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)).

Here, the Amended Complaint states a cause of action for breach of the implied covenant of good faith and fair dealing under New Jersey law. Plaintiff alleges that despite his "numerous attempts to secure the warrant document and exercise his rights" under the terms of the Contract, BioBanc "rebuffed, refused, or ignored" him. (Am. Compl. ¶ 19). Moreover, Plaintiff alleges that BioBanc "attempt[ed] to 'run out the clock' on [his] 3 year warrant by delaying action . . . past the expiration date of May 17, 2009." (Id. ¶ 20). Those allegations demonstrate that BioBanc purposely attempted to deny Plaintiff the benefits of the contract by delaying payment

7

and otherwise frustrating Plaintiff's efforts to exercise the warrant. Thus, the Amended Complaint states a cause of action for breach of the covenant of good faith and fair dealing under New Jersey law.

Moreover, Plaintiff states a claim for breach of the implied covenant of good faith and fair dealing claim under California law. Under California law, every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Foley v. Interactive Data Corp., 765 P.2d 373, 389 (Cal. 1988)) (quoting Restatement (Second) of Contracts § 205). The elements of a claim for breach of the covenant of good faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

Plaintiff alleged: (1) the existence of a valid contract, (2) that he satisfied his obligations under the contract, (3) BioBanc interfered with his rights to receive the benefits of the contract by failing to issue him common stock after he tendered the $10.00 check, and (4) as a result of BioBanc's actions, Plaintiff suffered damages. Those allegations state a cause of action for breach of the covenant of good faith and fair dealing under California law.

### 3. Promissory Estoppel

Under New Jersey law, a promissory estoppel claim includes four elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment."[3] Toll Bros., Inc. v. Bd. of

---

[3] The substantive elements of a promissory estoppel claim are effectively the same in California. See Laks v. Coast Fed. Sav. & Loan Ass'n, 131 Cal. Rptr. 836, 890 (Cal. Ct. App. 1976) (noting that the elements of a promissory

8

Chosen Freeholders of Burlington, 944 A.2d 1, 19 (N.J. 2008); see Lobiondo v. O'Callaghan, 815 A.2d 1013, 1020 (N.J. Super. Ct. App. Div. 2003).

Because Plaintiff failed to allege reasonable reliance, Plaintiff fails to state a cause of action for promissory estoppel under both New Jersey and California law.  Although the Amended Complaint alleges a promise, and harm caused by BioBanc's breach, the Amended Complaint fails to allege that Plaintiff reasonably relied upon BioBanc's promise.  That deficiency is fatal to Plaintiff's promissory estoppel claim.  Accordingly, the Court finds that Plaintiff failed to sufficiently plead a promissory estoppel claim.

### D. Whether BioBanc is Prejudiced by Entry of Default Judgment

Prior to entering default judgment, the Court must also consider the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." GP Acoustics, Inc., 2010 WL 3271726, at *3.  "In weighing these factors, [the] district court[] must remain mindful that, like dismissal with prejudice, default is a sanction of last resort." Doug Brady, Inc., 250 F.R.D. at 177 (citing Poulis, 747 F.2d at 867-68).

Here, the Court finds that Plaintiff is not prejudiced by entry of default judgment.  First, BioBanc does not have a meritorious defense.  "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established at trial, would constitute a complete defense to the action.'" U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984) (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)).  Although the Answer denies a majority of the allegations in the Amended Complaint, it fails to allege "specific facts beyond simple denials or conclusory statements." $55,518.05 in U.S.

---

estoppel claim are:  "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.").

Currency, 728 F.2d at 195.  Moreover, the only additional fact alleged in the Answer fails to provide BioBanc with a meritorious defense.  Paragraph 20 of the Answer alleges "Defendant denies paragraph 20 and will issue 2% of its common shares to plaintiff contemporaneous with plaintiff paying it the $250,000 stock purchase price."  (Answer ¶ 20).  However, that allegation does not give BioBanc a meritorious defense because even if BioBanc issued Plaintiff 2% of its common stock for $250,000, that remedy does not absolve BioBanc from liability for the alleged breach of contract.  Therefore, the Answer fails to allege facts sufficient to support a meritorious defense.

Second, Plaintiff is prejudiced by BioBanc's failure to obtain counsel because he cannot pursue his claim for damages as a result of BioBanc's refusal to comply with Magistrate Judge Williams's Order.  See Newman, 2010 WL 2265227, at *5 ("[P]laintiffs will be prejudiced if default judgment is not granted because they will not be able to seek damages for their injuries due to defendant's continuing refusal to comply with the Court orders.").  Third, it is apparent that BioBanc's conduct caused the delay because BioBanc ignored Magistrate Judge Williams's Order to obtain counsel for over ten months, and failed to seek an extension.  See id. (finding defendant's conduct culpable where defendant "refused to comply [with] Magistrate Judge's order to obtain counsel" and failed to seek an extension).

### E. Damages

Although "default establishes a party's liability for the well-pleaded allegations of the complaint," Hewitt, 2008 WL 4852912 at *2 (internal quotations omitted), it does not establish liability for the amount of damages claimed by the plaintiff, see Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of

mathematical computation."). Thus, the "district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnaise Secs., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). When conducting this inquiry, the district court has considerable latitude. Hewitt, 2008 WL 4852912 at *2 (citing Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993)). "If the damages are not for a 'sum certain or for a sum which can by computation be made certain,' . . . the 'court may conduct such hearings or order such references as it deems necessary and proper.'" Comdyne I, Inc., 908 F.2d at 1149 (quoting Fed. R. Civ. P. 55(b)(1), (2)). As the Supreme Court held in Pope v. United States, 323 U.S. 1 (1944), "[i]t is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Id. at 12.

Plaintiff requests $400,998.35. (O'Brien Decl. ¶ 18). That figure includes principal in the amount of $400,000.00 and $998.35 in costs. Plaintiff calculates his damages based on the PPM issued by BioBanc on July 23, 2009, which valued the company at $20,000,000.00. (O'Brien Decl. Ex. C, at 27). The PPM states: "[BioBanc] should provide exceptional returns to its investors. For an investment of $200,000 investors will receive approximately 1% interest in the Company (a $20 million pre-money valuation is assumed)." (Id.). Plaintiff reasons that because he is entitled to a 2% interest in BioBanc, and the PPM states that a 1% interest in BioBanc is worth $200,000.00, he is entitled to a cash payment of $400,000.00.

On these facts, a hearing is necessary because the Court cannot calculate Plaintiff's damages with certainty. First, it is unclear from the record whether $20 million represents the value of BioBanc at the time of the alleged breach. On February 19, 2009, Plaintiff tendered a $10.00 check to BioBanc to exercise the warrant. BioBanc cashed the check, but did not issue

Plaintiff stock. The Amended Complaint also alleges that on March 27, 2009 BioBanc informed Plaintiff that he could purchase 2,000 shares of common stock at a price of $125.00 per share. Thus, according to the Amended Complaint, sometime between February 19, 2009 and March 27, 2008, BioBanc breached the contract. BioBanc issued the PPM on July 23, 2009 – at least three months after the alleged breach. There is no evidence regarding the value of BioBanc during the intervening period between the alleged breach and the PPM. Because BioBanc's value at the time of breach is unclear at this time, a hearing is necessary in order to calculate damages with certainty.

Second, it appears that Plaintiff failed to mitigate damages. Under both New Jersey law and California law, a party has a duty to mitigate damages. Under New Jersey law, it is well-settled that "parties injured by a breach of contract have a common law obligation to take reasonable steps to mitigate their damages." State v. Ernst & Young, L.L.P., 902 A.2d 338, 348 (N.J. Super. Ct. App. Div. 2006). As the New Jersey Superior Court, Appellate Division explained,

> [o]nce a party has reason to know that performance by the other party will not be forthcoming, he is ordinarily expected . . . to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise . . . The amount of loss that he could reasonably have avoided by . . . making substitute arrangements . . . is simply subtracted from the amount that would otherwise have been recoverable as damages."

Id. (quoting Restatement (Second) of Contracts, § 350 cmt. b (1981)). "[T]he burden of proving facts in mitigation of damages rest[s] upon the party breaching the contract." Ingraham v. Trowbridge Builders, 687 A.2d 785, 791 (N.J. Super. Ct. App. Div. 1997) (quoting Cohen v. Radio-Electronics Officers, 645 A.2d 1248, 1259 (N.J. Super. Ct. App. Div. 1994)).

Likewise, California law also imposes a duty to mitigate damages. Under California law,

"[t]he doctrine of mitigation of damages holds that '[a] plaintiff who suffers damage as a result of . . . a breach of contract . . . has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." Valle de Oro Bank v. Gamboa, 32 Cal. Rptr. 2d 329, 331 (Cal. Ct. App. 1994) (quoting Shaffer v. Debbas, 21 Cal. Rptr. 2d 110, 114 (Cal. Ct. App. 1993)).

Here, the Court finds that a hearing is necessary to determine the appropriate amount of damages in light of Plaintiff's refusal to accept BioBanc's offer of 2,000 shares of common stock. As previously mentioned, under both New Jersey law and California law, a plaintiff has a duty to take "reasonable" steps to mitigate damages. In this case, BioBanc offered Plaintiff 2,000 shares of common stock – the precise amount of stock due under the express terms of the contract. Plaintiff rejected that offer. A hearing is necessary to determine the effect of Plaintiff's refusal to accept an offer of 2% of the common stock of BioBanc.

In sum, the Court finds that a hearing is necessary to determine the value of BioBanc at the time of the alleged breach, and the effect of Plaintiff's refusal to mitigate damages. Prior to that hearing, the parties may submit briefing in support of their respective positions in accordance with the schedule provided with the Order accompanying this Opinion.

### III.  CONCLUSION

For the reasons discussed above, Plaintiff's request for entry of default judgment is **GRANTED**. However, the Court will conduct a hearing to determine the appropriate amount of damages on Thursday, July 28, 2011. An appropriate order shall issue today.


Date:  6/23/2011                                                           /s/ Robert B. Kugler
                                                                           ROBERT B. KUGLER
                                                                           United States District Judge